[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12337
Non-Argument Calendar
_____

Agency No. A077-640-800

FLOYD HERBERT ABDUL,
SHARON SHAHADAT,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 20, 2017)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Floyd Abdul and Sharon Shahadat petition for review of the Board of Immigration Appeals (BIA) decision denying their applications for asylum and withholding of removal under the Immigration and Nationality Act (INA) and the Convention Against Torture. The BIA, affirming the decision by the Immigration Judge (IJ), concluded that Abdul's and Shahadat's applications for asylum were untimely and that Abdul and Shahadat failed to establish eligibility for withholding of removal under either the INA or the Convention Against Torture. After careful consideration of the record and the parties' briefs, we dismiss in part and deny in part.

I

Abdul and Shahadat are married, and both are natives and citizens of Zimbabwe. Abdul entered the United States in April 1999 as a non-immigrant visitor with authorization to remain in the United States until October 1999, while Shahadat entered the United States in April 2001 as a non-immigrant visitor with authorization to remain until October 2001. Both Abdul and Shahadat stayed in the United States beyond their authorized time periods, leading the Department of Homeland Security to commence removal proceedings against Abdul in October 2002 and against Shahadat in May 2003. Thereafter, Abdul and Shahadat filed applications for asylum and withholding of removal claiming that, if they are

2

removed to Zimbabwe, they will be persecuted and tortured because of their political opinions.

In 2013, an IJ held a hearing on Abdul's and Shahadat's requests for asylum and withholding of removal. Abdul and Shahadat both testified at the hearing, and they offered various documents into evidence. The documents included, among other things, a Department of State Human Rights Report for Zimbabwe, e-mails between Abdul and members of a Zimbabwean opposition party, records indicating that Abdul and Shahadat attended meetings for a United States branch of the Zimbabwean opposition party, and several affidavits from friends and family members.

Abdul testified that, just prior to entering the United States in 1999, he was harassed by members of the Zimbabwean government because of his involvement with a trade union. According to Abdul, on one occasion police officers beat him and his roommate, forcing them to seek medical attention,[1] and on another occasion he was abducted from his apartment.[2] Abdul indicated that this harassment contributed to his decision to visit the United States, but he also indicated that he came to the United States for "holiday." After entering the United States, Abdul married a United States citizen, and because of the marriage,

---

[1] An affidavit from Abdul's roommate undermines Abdul's testimony about this alleged encounter with police. The affidavit discusses the encounter but provides no indication that Abdul and the roommate sought medical attention.
[2] Although Abdul lived with his roommate at the time of the alleged abduction, the roommate's affidavit does not mention the abduction.

3

he decided to stay in the country beyond his authorized time period. However, Abdul divorced the United States citizen in 2001 and married Shahadat in 2002. In testifying about his relationship with Shahadat, Abdul at one point stated that he met her in 1998 in Zimbabwe but at another point stated that he met her in the United States in summer 2001.

Abdul also testified that, while living in the United States, he has become active in Zimbabwean politics and that he fears the Zimbabwean government will persecute him based on his political opinions if he is removed to Zimbabwe. Abdul explained that in June 2003 he started supporting a Zimbabwean opposition party and criticizing the Zimbabwean government. He expressed his views about the party and the government on the internet and through letters to Zimbabwean government officials. As evidence that he will face persecution for these activities and his political opinions if he returns to Zimbabwe, Abdul noted that in response to his internet posts he has been threatened and has received "negative comments."

Shahadat testified that she met Abdul in Zimbabwe in 1998 and married him in 2002. She stated that she is affiliated with the same opposition party as Abdul and that she fears that, because of Abdul's political activities, she will be persecuted if she returns to Zimbabwe.

The IJ denied Abdul's and Shahadat's applications for asylum and withholding of removal. The IJ first concluded that Abdul's and Shahadat's

applications for asylum are time barred.  Next, the IJ found that Abdul and Shahadat failed to offer sufficient evidence to establish eligibility for withholding of removal under either the INA or the Convention Against Torture.  The evidence offered by Abdul and Shahadat, the IJ concluded, lacked both credibility and probative value.  The IJ, for example, determined that Abdul's testimony was not reliable because it included various inconsistencies and, during the testimony, Abdul was evasive of simple questions and often nonresponsive.  The IJ also determined that the documents submitted by Abdul and Shahadat were "largely self-made and ha[d] no proof of authenticity."

The BIA affirmed the IJ's decision.  The IJ, the BIA found, did not err in finding that Abdul's and Shahadat's applications for asylum are time barred, nor did the IJ err in finding that Abdul and Shahadat failed to establish eligibility for withholding of removal under either the INA or the Convention Against Torture.

II

In seeking review of the BIA's decision, Abdul and Shahadat argue that the BIA erred in affirming the IJ's findings that (1) their applications for asylum are time barred, (2) Abdul's testimony was not credible, and (3) they failed to establish eligibility for withholding of removal under either the INA or the Convention Against Torture.  We address each argument in turn.

A

5

We must dismiss Abdul and Shahadat's challenge to the BIA's time-barred finding because our court does not have jurisdiction to review the finding. We have repeatedly held that 8 U.S.C. § 1158(a)(3) divests us of jurisdiction to review a BIA determination that an application for asylum is time barred. *See, e.g.*, *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005) (per curiam); *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

### B

The BIA did not err in affirming the IJ's finding that Abdul's testimony was not credible. Applying the "highly deferential" substantial evidence test, we cannot conclude that the BIA committed reversible error. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 860 (11th Cir. 2007) (per curiam); *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) ("[C]redibility determinations . . . are reviewed under the substantial evidence test." (internal quotation marks omitted)).

Under the substantial evidence test, we must affirm a BIA credibility determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *See Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (internal quotation marks omitted). This standard is "highly deferential." *Id.* We take the evidence in the "light most favorable" to the BIA's determination, "draw[ing] all reasonable inferences in favor of" the determination. *Forgue*, 401 F.3d at 1286 (internal quotation marks omitted). And "[w]e may

reverse only when the record compels it." *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964 (11th Cir. 2011) (per curiam) (internal quotation marks omitted).

Substantial evidence supports the BIA's credibility determination. First, Abdul's testimony, construed in the light most favorable to the BIA's determination, was both internally inconsistent and inconsistent with documents that Abdul himself and Shahadat submitted to the IJ. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) ("[A] trier of fact may base a credibility determination on the . . . consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence . . . , without regard to whether an inconsistency . . . goes to the heart of the applicant's claim, or any other relevant factor."). Second, the IJ specifically found that Abdul's demeanor during his testimony indicated that the testimony was not reliable. *See id.* ("[A] trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . ."); *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324–25 (11th Cir. 2010) ("[W]e afford great deference to an IJ's assessment of 'demeanor' [because the IJ] . . . observ[es] the [witness] and assess[es] his or her tone and appearance.").

## C

The BIA did not err in affirming the IJ's finding that Abdul and Shahadat failed to establish eligibility for withholding of removal under either the INA or the

7

Convention Against Torture.  We review the BIA's withholding-of-removal determination under the substantial evidence test.  *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (per curiam) (reviewing a withholding-of-removal determination under the INA for substantial evidence); *Najjar*, 257 F.3d at 1304 (reviewing a withholding-of-removal determination under the Convention Against Torture for substantial evidence).  And taking the record in the light most favorable to the BIA's determination, *see Forgue*, 401 F.3d at 1286, the determination is supported by substantial evidence.

"To obtain withholding of removal [under the INA], an applicant must establish that her life or freedom would be threatened [upon removal] because of her race, religion, nationality, membership in a particular social group, or political opinion." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006) (internal quotation marks omitted).  And to obtain withholding of removal under the Convention Against Torture, an applicant must "establish that it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." *See Najjar*, 257 F.3d at 1303 (internal quotation marks omitted).  However, the evidence, when taken in the light most favorable to the BIA's determination, does not establish that Abdul and Shahadat will be singled out for persecution or torture in Zimbabwe.  Abdul and Shahadat submitted evidence showing that, while living in the United States, they have been involved with a Zimbabwean opposition party,

8

and they have offered evidence showing that Zimbabwean government officials often persecute political activists.  But because Abdul's testimony was not credible and many of the documents that Abdul and Shahadat offered into evidence are of limited probative value, the record does not establish that "it is more likely than not [that they] will be persecuted or tortured upon being returned to" Zimbabwe.  *See Tan*, 446 F.3d at 1375 (internal quotation marks omitted).  The record shows neither that Zimbabwean government officials are aware of Abdul's and Shahadat's political activity in the United States nor that Abdul and Shahadat will continue their political activity in Zimbabwe nor that Abdul and Shahadat experienced past persecution in Zimbabwe because of their political opinions.

III

We dismiss Abdul and Shahadat's petition to the extent that it seeks review of the BIA's time-barred determination, and we deny the remainder of the petition.

**DISMISSED IN PART, DENIED IN PART.**